PATTERSON, Judge.
The appellant, Tori Thomas, appeals his February 13, 1992, conviction for rape in the first degree and his sentence of life imprisonment without the possibility of parole. He raises four issues for review on appeal. Issues II and III shall be addressed together.
I
The appellant first contends that the trial court abused its discretion when it excused a principal juror in favor of an alternate juror, where allegedly there was no showing that the principal juror was biased against the state.[1] The trial court determined the juror in question, Juror R., to be unfit for jury service after the trial court held an in camera hearing to investigate information that Juror R. had brought to the trial court’s attention. The appellant objected to that ruling.
Testimony taken at the hearing tended to show the following facts. On the morning of the second day of trial, Juror R. approached the trial court and said that she had realized that she knew the appellant’s father and mother. Juror R. explained that the appellant’s father had been her younger brother’s baseball coach many years ago, but that she had not had contact with the family since that time and that she had never personally known the appellant. Juror R. testified that she had thought that *143 she recognized the appellant, but that she was not sure until she saw his mother in the restroom during a short break. Juror R. assured the court that she did not speak to the appellant’s mother at that time. She also stated that her familiarity with the appellant’s family would not put any undue pressure on her.
The trial court, after allowing Juror R. to return to the jury room, made the following comments to the attorneys concerning its decision:
“THE COURT: Well, of course the court’s dilemma is I don’t know if this thing cuts both ways. What she knows about the Defendant and his family could — there’s a possibility that it could hurt him as well as help him, I don’t know. I don’t know what she knows, and I didn’t want to go into it. If we [had] gone into those matters it would perhaps have told her something that would have biased or prejudiced or affected her ability to be fair in this case. The defendant does have a criminal record, and I don’t know if she knows anything about that.
[[Image here]]
“THE COURT: ... I may perhaps excuse her, because it is unfortunate that she just realized that she did indicate that she thought she knew him at some point, but I wasn’t clear about when she thought she knew the Defendant, whether that was yesterday during voir dire or whether it was some point after we started the trial.
“So I get the impression that she just thought he looked familiar or something. It sounds like something she should have told us during voir dire and perhaps she was reluctant to tell us at that time....
[[Image here]]
“[THE COURT]: Another thing that occurred to me, I didn’t say anything to [Juror R.] about talking about what she might know about the family with other jurors. Well, I think I will go ahead and excuse [Juror R.].”
The appellant argues that the trial court’s decision to excuse Juror R. amounted to an abuse of its discretion. We disagree. The trial court properly utilized the provisions of § 12-16-100(c), Code of Alabama 1975, when it decided to excuse Juror R. in favor of the alternate juror. Subsection (c) allows the trial court, at its election, to use the alternate “if it becomes necessary for an alternate to replace a principal juror.” “Whether it is necessary for an alternate juror to replace a principal juror under § 12-6-100(c), as amended, Code of Alabama 1975, is a decision within the sound discretion of the trial judge, subject only to review for an abuse of discretion.” Rocker v. State, 443 So.2d 1316, 1320 (Ala. Cr.App.1983) (citations omitted).
“As for the judge’s decision that the circumstances are such that a juror must be excused and replaced by an alternate or additional juror, the judge has considerable discretion here as well. Despite the fact that there are circumstances in which the defendant has a ‘right to have his trial completed by a particular tribunal,’ the judge’s action in excusing a juror will be upheld ‘if the record shows some legitimate basis for his decision.’ This is because the defendant has still been tried by 12 persons selected by him, with even those originally designated as alternates being selected in the same fashion as the other jurors.”
3 W. LaFave & J. Israel, Criminal Procedure § 21.3(e), p. 742 (1984) (footnotes omitted).
In the present case, there is no doubt that Juror R. had some knowledge of the appellant and his family. (In addition to the facts stated above, she indicated that she knew the location of the appellant’s mother’s residence and was aware that the appellant’s father had died.) The trial court properly recognized that Juror R.’s knowledge of the appellant’s family could include knowledge of the appellant’s past criminal history. The trial court was placed in a difficult position. Because the trial had already started, the court could not have easily questioned Juror R. concerning the appellant’s criminal record without risking prejudicing the defense, were she to remain on the jury. If the court had simply allowed her to remain on *144 the jury without questioning her at all, the trial court would have risked allowing a possibly tainted juror to infect the entire jury, if she in fact possessed information of the appellant’s prior record. Moreover, the court was faced with its concern that Juror R. should have revealed, during voir dire examination, her familiarity with the appellant’s family and, also, with the prosecution’s claim that its jury strikes would certainly have been different had such information been disclosed. We find that, upon these facts, the trial court was correct in its conclusion that the only solution would be to excuse Juror R. and replace her with an alternate. We conclude that the record shows a legitimate basis for the decision and that the trial court did not abuse its discretion when it so decided.
II and III
The appellant’s next contention is that the trial court erred when it overruled his objections and motions for a mistrial following two separate alleged comments made by the prosecutor during closing arguments. The statements complained of are not contained in the record on appeal. The record merely refers to the objections of the appellant’s counsel and to his arguments for a mistrial.
During the state’s closing argument, the appellant's counsel made the first of two objections as follows:
“MR. NAIL [defense counsel]: I object to what she thinks, Your Honor. Her opinion is improper, it’s irrelevant, I object to her opinion about what she thought, they would be here or not be here, that whole line of argument is improper and we object to it.
“THE COURT: Overruled, I believe it is in response to some things that defense counsel said. Go ahead.
“MR. NAIL: These witnesses, may it please [the] court, are just as available to the State or more so than they are to the Defendant, and we would object to it, it’s an improper argument.
“THE COURT: Overruled, go ahead. “MS. ROSENBAUM [the prosecutor]: Exactly the point, they were not here for either party.
“MR. NAIL: They were not here for either party. They were just as equally available to the State as they are to this Defendant, and I object to it, it’s improper argument. We would ask for a mistrial based on [a] cumulative prejudicial argument of the prosecution.
“THE COURT: Overruled. Go into some other subject, please.”
Shortly after making this objection, the appellant’s counsel again objected to the state’s closing argument, as follows:
“MR. NAIL: I object to that, may it please the Court, characterization, being Mike Tyson, it’s an improper argument. It’s prejudicial and again, I renew a request for mistrial based on [a] cumulative and improper argument of the prosecutor.
“THE COURT: Overruled, go ahead.”
It is evident, after a careful reading of the appellant’s objections, that a review of the trial court’s rulings on these two objections is impossible. The appellant has failed to present us with a record that contains the statements complained of or objections that describe with reasonable certainty what was said and the context in which the statements were made. Before improper argument can be the basis for a reversal, we must be able to ascertain with reasonable certainty what was said and in what context it was said. See Bethune v. State, 542 So.2d 332 (Ala.Cr.App.1989). “It is well established that objectionable remarks should be fully quoted, or substantially so, in an objection to improper argument.” Id. at 334 (quoting Jones v. State, 460 So.2d 1382, 1383 (Ala.1984)).
“We can consider the case only as it is presented in the record. The duty is on the appellant to present the points he intends to raise, on the record, with reasonable certainty. We will not reverse a conviction by presuming a fact not shown by the record and making it a ground for reversal.”
Walters v. State, 585 So.2d 206, 211 (Ala.Cr.App.1991).
For the foregoing reasons, we find that the appellant’s issues relating to the state’s *145 closing arguments have not been preserved for our review.
IV
The appellant’s final contention is that the trial court erred when it refused to give the following requested jury instruction: “The Court charges the jury that if you believe from the evidence that there is a probability of Defendant’s innocence, you cannot convict the Defendant.” The appellant made the following objection to the trial court’s oral charge to the jury:
“We except to the Court’s failure to give Defendant’s charge number five, which deals with the probability of the Defendant’s innocence, and submit that that’s a correct statement of the law, that that is the law in this state and every state as far as I know, and we would object to the Court not giving Defendant’s number five, and not covering anything similar to our charge in its oral charge.”
The appellant argues that the refused instruction was approved as a correct statement of the law in Duncan v. State, 31 Ala.App. 186, 13 So.2d 695 (1943). Yet, the instruction that was offered and refused in Duncan was quite different from the one in this case. In Duncan, the refused instruction was stated as follows: “The court charges the jury that if there is a probability that accused is innocent, arising from the evidence, there is a ‘reasonable doubt’ as to his guilt,” id. at 186, 13 So.2d at 695. Clearly, the Duncan instruction sought to clarify the term “reasonable doubt.” The requested instruction in the present case does not even mention reasonable doubt, and indeed, could be construed as an attempt to redefine the burden of proof.
Moreover, we need not resort to this distinction to dispose of the appellant’s contention. Rather, Duncan offers further guidance. Although the Duncan court did find the refused instruction to be a correct statement of the law, that court did not find that its refusal was ground for reversal. Instead, it found the following: “[T]he substance of the requested charge was covered by and included in the oral charge of the court. So, in no event was the appellant harmed by the refusal of said charge.” Id. at 186-87, 13 So.2d at 696. This rationale is now embodied in the A.R.Crim.P. 21.1, which states:
“The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court’s oral charge or in other charges given at the request of the parties.”
The trial court in this case thoroughly and adequately instructed the jury on reasonable doubt. The appellant’s requested instruction, assuming it sought to clarify the term “reasonable doubt,” was simply not necessary. The trial court properly refused the instruction.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. We assume that this juror was a principal juror because the prosecutor suggested that she be declared the alternate juror at the end of the evidence rather than be excused during the trial.